UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADOLFO CRUZ, JR.,

        Petitioner,

                                      Case No. 11-15502

v.

                                      HON. AVERN COHN

JOAN ROGGENBUCK,

        Respondent.

_____/

**MEMORANDUM AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

### I. Introduction

This is a habeas corpus case under 28 U.S.C. § 2254. Petitioner Adolfo Cruz, Jr., challenges his Wayne County convictions for four counts of criminal sexual conduct and one count of disseminating sexually explicit matter to a minor. He claims that the trial court infringed on his right of confrontation, his trial attorney was ineffective, the cumulative effect of errors deprived him of a fair trial, and the trial court relied on inaccurate information and abused its discretion at sentencing. The Court agrees with Respondent that Petitioner's claims do not warrant habeas relief. Accordingly, the habeas petition will be denied. A procedural history and analysis follow.

### II. Background

The Michigan Court of Appeals provided a brief overview of the case, as follows:

    Defendant's convictions stem from the sexual abuse of his neighbor's

> daughter when she was eleven or twelve years of age.  Prior to trial, defendant moved to admit testimony that the victim had previously falsely accused her uncle of sexual abuse.  The trial court denied the motion, ruling that defendant had failed to show that the victim's statements were definitively false.
> At trial, defendant's theory of the case was that the victim was lying. Defendant testifies that the sexual abuse had not occurred.  The victim's mother's testimony regarding what the victim has told her was substantially consistent with the victim's version of events. . . .

People v. Cruz, 2010 WL 2292005, *1  (Mich. Ct. App. June 8, 2010).

Petitioner was charged and tried in Wayne County Circuit Court on three counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under thirteen years of age), one count of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a) (sexual contact with a person under thirteen years of age), and one count of disseminating sexually explicit matter to a minor, Mich. Comp. Laws § 722.675.

The victim disclosed the sexual abuse to her mother at the age of seventeen, and she was nineteen years old at trial.  Several witnesses testified at trial.  They were as follows:  (1) Trina Munoz, the victim's mother; (2), the victim; (3), Jeffrey Adams, the victim's former boyfriend; (5) Ayesha Cruz, Petitioner's wife; and (6) Petitioner.

During the trial, Petitioner's counsel argues that the victim gave inconsistent versions of the facts, had lied to the police and her boyfriend, and was not a credible witness.  On August 8, 2008, however, the jury found Petitioner guilty as charged.  On August 27, 2008, the trial court sentenced Petitioner to prison for concurrent terms of twelve to eighteen years for first-degree criminal sexual conduct and ten to fifteen years in prison for second-degree criminal sexual conduct.  The trial court sentenced Petitioner to time served for disseminating sexually explicit matter to a minor.

Petitioner raised his habeas claims in an appeal of right. He raised claims one, two, and three through counsel and claims four and five in a pro se supplemental brief. The Michigan Court of Appeals was unpersuaded by his arguments and affirmed his convictions and sentence in an unpublished, per curiam opinion. See People v. Cruz, No. 289052, 2010 WL 2292005 (Mich. Ct. App. June 8, 2010). Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal on December 20, 2010, because it was not persuaded to review the issues. See People v. Cruz, 791 N.W.2d 444 (Mich. 2010) (table).

Petitioner then filed the instant petition, raising the following claims: (1) the trial court infringed on his right of confrontation by excluding testimony about the complainant's prior false accusation of sexual abuse; (2) defense counsel's cross-examination of the complainant constituted ineffective assistance of counsel because it placed inadmissible and prejudicial hearsay before the jury; (3) the cumulative effect of the errors deprived him of a fair trial and due process of law; (4) the trial court imposed a sentence on the basis of inaccurate information; and (5) the trial court abused its discretion by not permitting him to read the victim impact statement at sentencing.

Respondent argues that Petitioner is not entitled to relief because: the state appellate court's adjudication of claims one and two was not contrary to, or an unreasonable application of, Supreme Court precedent; his third claim is not cognizable on habeas review; his fourth claim is procedurally defaulted; and his fifth claim lacks merit.

### III. Standard of Review

28 U.S.C. § 2254(d) provides:

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, __ U.S. __, __, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute

> for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87 (quotation marks and internal citation omitted).

In simple terms, the Supreme Court has said that the standard of review is "difficult to meet" and is a "highly deferential standard for evaluating state-court rulings. . . ." Cullen v. Pinholster, __ U.S. __, __, 131 S. Ct. 1388, 1398 (2011) (internal and end citations omitted). The Supreme Court has further said that a federal court must guard against "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 799 (2010).

Finally, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. Analysis

#### A. Claim 1 - Confrontation Clause

Petitioner alleges that the trial court abused its discretion and violated his constitutional right of confrontation by preventing him from questioning the complainant about her statement to a school counselor that her uncle had sexually abused her. Petitioner contends that the victim's accusation about her uncle was false and that the trial court should have permitted him to question the victim about it. According to Petitioner, the fact that the victim made a prior false accusation of rape directly bore on

5

her credibility and could have established reasonable doubt in the jurors' minds. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that the trial court did not err by prohibiting the testimony.

### 1. Legal Framework

State court rulings on the admissibility or exclusion of evidence generally may not be questioned in a federal habeas corpus proceeding. Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) (citing Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988)). Petitioner, however, alleges that the denial of his right to present evidence violated his constitutional right of confrontation and, in particular, the right to cross-examination.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. This Clause is applicable to the States through the Fourteenth Amendment. Idaho v. Wright, 497 U.S. 805, 813 (1990).

The right of confrontation "includes the right to cross-examine witnesses." Richardson v. Marsh, 481 U.S. 200, 206 (1987) (citing Pointer v. Texas, 380 U.S. 400, 404, 406-07 (1965)). Cross-examination may be used to test the believability of a witness and to expose a witness's bias, prejudice, partiality, or motivation for testifying. Davis v. Alaska, 415 U.S. 308, 316-17 (1974). Trial courts, however, have broad discretion to limit the scope of cross-examination by precluding "repetitive and unduly harassing interrogation." Id. at 316.

> Where it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion, though of course that discretion may be abused.

> [T]he test in such circumstances is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory. "[O]nce cross-examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied."

Dorsey v. Parke, 872 F.2d 163, 167 (6th Cir. 1989) (citations omitted).

> While Michigan has a rape-shield statute, this law does not preclude admission of evidence of prior false or unsubstantiated rape allegations. See Michigan v. Garvie, 148 Mich. App. 444, 384 N.W.2d 796, 798 (1986) ("Notwithstanding the [Michigan rape-shield] statute, the defendant should be permitted to show that the victim has made false accusations of rape in the past.") (internal quotation and citation omitted). And while Michigan does not generally permit the introduction of extrinsic evidence to attack the credibility of a witness, specific instances of conduct may be inquired into on cross-examination of the witness if the court considers them to be probative of truthfulness or untruthfulness. See MRE 608(b).

Mathis v. Berghuis, 90 F. App'x 101, 107 (6th Cir. 2004).

Evidence of a prior false allegation of rape is admissible only if the defendant makes an offer of proof with "concrete evidence" establishing that the victim previously made a false accusation of sexual abuse and that the evidence is relevant to the purpose for which it is sought to be admitted. People v. Williams, 477 N.W.2d 877, 879 (Mich. Ct. App. 1991). "Moreover, the trial court continues to possess the discretionary power to exclude relevant evidence offered for any purpose where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues or misleading the jury." People v. Hackett, 365 N.W.2d 120, 126 (Mich. 1984) (citing Mich. R. Evid. 403; People v. DerMartzex, 213 N.W.2d 97 (Mich. 1973); and People v. Oliphant, 250 N.W.2d 433 (Mich. 1976)).

### 2. Application

The facts underlying Petitioner's claim were explained by the Michigan Court of Appeals as follows:

> During the preliminary examination, the victim testified on cross-examination that she had told her school counselor that her uncle had sexually abused her. She further testified that she had not lied about this incident and that she had not ever made any false accusations of sexual abuse in the past. Defendant sought to introduce this testimony at trial for impeachment purposes, arguing that it was relevant and had a high probative value given that the case would turn on credibility. The trial court denied the motion, ruling that defendant had failed to make an adequate offer of proof and that the evidence was otherwise inadmissible because its danger of unfair prejudice outweighed its probative value.

Cruz, 2010 WL 2292005, at *2.

The court of appeals determined that the trial court did not abuse its discretion by preventing Petitioner from introducing evidence of the victim's prior accusation, because Petitioner's offer of proof consisted of his and his wife's allegations that the victim had said her accusation about her uncle was false. The court of appeals stated that, "[w]hile this may be some evidence that the accusation was false, it [was] far from 'concrete,' " and that Petitioner had failed to substantiate his claim that the victim previously lied. Id. The court of appeals concluded that "it was not error for the trial court to find that defendant failed to meet his burden of proof." Id. The trial court also concluded that the trial court did not err when it determined "that the danger of unfair prejudice outweighed the evidence's probative value." Id. The court of appeals stated that,

> [w]hile the testimony would undoubtedly have been relevant to the victim's credibility, its probative value was small given that the evidence of falsity consisted of defendant' and his wife's self-serving allegations. The trial court assigned the evidence little weight and determined that the potential for this evidence to unfairly confuse, mislead, and inflame the passions of the jury far outweighed its probative value.

Id.

8

Petitioner concedes that he has been unable to offer any concrete evidence that the victim made a false accusation of being sexually abused by her uncle. In fact, as the Michigan Court of Appeals pointed out, the victim testified at the preliminary examination that she told the truth when she informed her school counselor about a sexual assault by her uncle. She also testified at the preliminary examination that she had never lied to anybody about sexual assault allegations. (Prelim. Examination Tr., 35, Apr. 15, 2008.)

The record, moreover, indicates that defense counsel had ample opportunity to challenge the victim's credibility at trial. Defense counsel began his cross-examination of the victim by asking her about her written statement to the police. He elicited testimony that, although the victim testified at trial that the abuse began in the year 2000 when she was eleven years old, she wrote in her police statement that the abuse started in May of 2002. Defense counsel elicited additional testimony that, although the victim had testified that some of the sexual activity occurred in Taylor, Michigan in the year 2003, Petitioner did not move to Taylor until 2004, and he was living in Puerto Rico in 2003. The victim then admitted that her memory of dates was not fresh in her mind and that she had provided conflicting dates about when the abuse started.

Defense counsel also brought the fact that, after four years of alleged abuse, the victim wrote to Petitioner in 2003 and stated that she viewed him as a father figure and wished he were her father. Defense counsel elicited additional testimony that the victim did not recall the year when Petitioner allegedly showed her a pornographic movie and that she never told the prosecutor or the police about a calendar in which she recorded

9

her sexual activity with Petitioner.

Despite the limits placed on the cross-examination, defense counsel was able to provide the jury with enough information to appraise the victim's credibility and to assess the defense theory that the victim was lying. Thus, Petitioner's right of confrontation was not violated. The Michigan Court of Appeals' was correct in concluding the same.

Furthermore, even if the trial court erred, " 'whether the trial judge was right or wrong is not the pertinent question under AEDPA,' Renico, 130 S. Ct. at 1865 n.3. The question is whether the last state court's decision was 'objectively unreasonable.' Williams, 529 U.S. at 409." Gagne v. Booker, 680 F.3d 493, 517 (6th Cir.) (citations and quotation marks omitted), cert denied, __ U.S. __, 133 S. Ct. 481 (2012).

The Michigan Court of Appeals was the last state court to issue a reasoned opinion on Petitioner's claim, and it concluded that Petitioner had failed to substantiate his claim that the victim lied about being sexually abused by her uncle. The court of appeals also found that, while the evidence would have been relevant to the victim's credibility, its probative value was small, given that the evidence of falsity consisted of Petitioner's and his wife's self-serving allegations. The state court's ruling was "not 'so lacking in justification' as to be 'beyond any possibility for fairminded disagreement.' " Id. at 517-518 (quoting Richter, 131 S.Ct. at 787). Petitioner therefore has no right to relief on the basis of his claim under the Confrontation Clause. The Court denies relief on Petitioner's first claim.

### B.  Claim 2 - Ineffective Assistance of Trial Counsel

Petitioner alleges that his trial attorney deprived him of effective assistance by

eliciting damaging and inadmissible hearsay on cross-examination of the victim's mother, Trina Munoz. The hearsay consisted of the victim's statements to Munoz regarding the year that the sexual abuse began, the nature of the alleged abuse, the locations where the abuse occurred, and the number of times the abuse happened. Petitioner claims that trial counsel's cross-examination of Munoz on these issues bolstered the victim's subsequent testimony.

The Michigan Court of Appeals determined that Petitioner's claim of ineffective assistance failed on the merits. In reaching this conclusion, the court of appeals stated that, "[b]ecause defendant's theory of the case was that the victim was lying, it is obvious that counsel pursued this line of questioning in order to show that the victim's testimony was false." Cruz, 2010 WL 2292005, at *2. The court of appeals concluded that Petitioner had "not overcome the presumption that counsel's performance constituted sound trial strategy and was otherwise reasonable." Id. The court of appeals also concluded that the outcome of the trial would not have been different absent counsel's allegedly deficient performance because the mother's testimony was largely cumulative of the victim's testimony.

### 1. Legal Framework

To prevail on his claim, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Hodges v. Colson, 727 F.3d 517, 541-42 (6th Cir. 2013). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

An attorney's performance is deficient if "in light of all the circumstances, the identified acts and omissions were outside the wide range of professionally competent assistance." Id. at 690. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

To satisfy the prejudice prong of the Strickland test, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792 (quoting Strickland, 466 U.S. at 693).

### 2. Application

On direct examination of the victim's mother, the prosecutor asked, "[D]id there come a time when Jeffrey Adams revealed something to you that we're all here for today?" (Trial Tr., Vol. II, 38, Aug. 7, 2008.) Munoz answered, "Yes." She claimed that Adams had revealed something to her in 2007 when the victim was seventeen years old and that she then talked to the victim about what Adams had said. The prosecutor subsequently explained that Munoz was not permitted to repeat what Jeffrey or the victim had said to her, because that was hearsay. Munoz then testified that, after she spoke with the victim, they held each other and cried and, on the next day, they informed Petitioner's wife what had happened. Munoz also stated that, a few days later,

12

she and the victim went to the police station to file a report. (Id. at 38-40.) At no point on direct examination did Munoz reveal what Adams or the victim had said to her.

On cross-examination, however, defense counsel elicited from Munoz very specific testimony about what the victim had said to her. According to Munoz, the victim had said that Petitioner tried to engage in sexual intercourse with her, that there was oral sex, that he inserted his fingers inside her, that he touched her breast and buttocks, and that he took nude pictures of her. This line of questioning continued until the prosecutor objected on the ground that the testimony was hearsay. (Id. at 65-68.)

Trial counsel's tactic of eliciting specific and damaging testimony about Petitioner's sexual activity with an underage girl was somewhat risky. The Court nevertheless cannot say that counsel's cross-examination of Munoz amounted to ineffective assistance because, even if defense counsel's elicitation of hearsay testimony constituted deficient performance, the victim subsequently testified about her sexual activity with Petitioner. The victim was very specific about the sexual activity that she and Petitioner had engaged in, not only during the time in question, but also when she was even younger. Therefore, defense counsel's allegedly deficient performance did not prejudice the defense.

"The Sixth Amendment does not guarantee the right to perfect counsel," Burt v. Titlow, __ U.S. __, __, 134 S. Ct. 10, 18 (2013), and the state appellate court's conclusion that defense counsel was not ineffective was not contrary to, or an unreasonable application of, Strickland. The Court therefore denies relief on Petitioner's claim of ineffective assistance of trial counsel.

### C.  Claim 3 - Cumulative Effect of Errors

13

Petitioner alleges next that the cumulative effect of errors at trial and at sentencing deprived him of a fair trial and due process of law. He contends that, although each of the errors, viewed separately, may not have risen to the level of reversible error, their cumulative effect was so prejudicial as to require a new trial.

The Michigan Court of Appeals stated that the trial court did not err by prohibiting testimony about the prior accusation of sexual abuse and that, even assuming the trial court erred by permitting defense counsel to elicit hearsay testimony from the victim's mother, the error was harmless. The court of appeals noted that Petitioner caused the hearsay problem and, because the mother's testimony was largely cumulative of the victim's testimony, the alleged error was harmless. The court of appeals concluded that Petitioner was not entitled to relief on the basis of his claim of cumulative error.

The United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir. 2002). Further, in this Circuit, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable on habeas review. Sheppard v. Bagley, 657 F.3d 338, 348 (6th Cir. 2011) (citing Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005)), cert. denied sub nom Sheppard v. Robinson, __ U.S. __, 132 S. Ct. 2751 (2012). Thus, Petitioner is not entitled to relief on this claim.

### D. Claims 4 and 5 - Sentencing Errors

Petitioner's fourth and fifth claims allege sentencing errors. Petitioner contends that the trial court relied on inaccurate information at sentencing and abused its

discretion by not permitting him to read the victim impact statement at sentencing. Although Respondent argues that this claim is procedurally defaulted, a procedural default "is not a jurisdictional matter," Trest v. Cain, 522 U.S. 87, 89 (1997), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003). The Court therefore excuses the alleged procedural default and proceeds directly to the merits because, as explained below, the claims lack merit.

### 1. Use of Inaccurate Information

Petitioner alleges that two offense variables in the state sentencing guidelines were inaccurately scored at fifty points, and, even though both the prosecutor and defense counsel agreed that the two offense variables should be scored as zero, the trial court never corrected his presentence investigation report. The Michigan Court of Appeals determined that Petitioner waived his claim that the trial court relied on inaccurate information at sentencing because Petitioner agreed that the information contained in the presentence investigation report was correct. The court of appeals affirmed Petitioner's sentence after concluding that Petitioner was sentenced within the corrected guidelines and that there was no error.

The record confirms that Petitioner and defense counsel reviewed the presentence investigation report and found it to be factually accurate. (Sentencing Tr., 3-4, Aug, 27, 2008.) Even if the report contained inaccuracies, "the mere presence of . . . inaccurate information in a [presentence report] does not constitute a denial of due process." Hili v. Sciarrotta, 140 F.3d 210, 216 (2nd Cir. 1998). The contention that a presentence information report contains inaccurate information raises

> [a] state law issue[], and "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

Rodriguez v. Jones, 625 F. Supp. 2d 552, 569 (E.D. Mich. 2009), aff'd, 478 F. App'x 271 (6th Cir. 2012).

Furthermore, the trial court sentenced Petitioner within the corrected sentencing guidelines, and there is no indication in the record that the court relied on "misinformation of constitutional magnitude," United States v. Tucker, 404 U.S. 443, 447 (1972), or on "extensively and materially false" information that Petitioner had no opportunity to correct through counsel, Townsend v. Burke, 334 U.S. 736, 741 (1948). Therefore, Petitioner is not entitled to relief on his claim that the trial court imposed a sentence on the basis of inaccurate information.

### 2. The Victim Impact Statement

Petitioner claims that the trial court abused its discretion by not allowing him to read the victim impact statement at sentencing. As a result, he claims that he was denied his right to full allocution, because he lacked an opportunity to challenge the truth of any statements contained in the victim's statement.

The Michigan Court of Appeals rejected this claim because there was no indication in the record that Petitioner did not review the victim's statement or that the trial court relied on the victim's statement when scoring the guidelines. The court of appeals concluded that any false information in the victim's statement was harmless because there was other credible evidence that the parties agreed was accurate and

that supported the trial court's scoring

Although Petitioner claims that he was denied his right of allocution, the record indicates that he was aware of his right to address the court and waived the right. (Sentencing Tr., 6-7, Aug. 27, 2008.) The waiver occurred before the trial court mentioned the victim impact statement, but there is no indication in the record that Petitioner did not see the statement before his sentencing. He did not ask to see the statement, nor say that he had not seen the statement. Further, as the Michigan Court of Appeals recognized, victim impact statements typically are included in presentence investigation reports, see Mich. Ct. R. 6.425(A)(1)(g), and defense counsel stated that he and Petitioner had reviewed the report.

Petitioner claims that the victim impact statement was not included in the presentence investigation report. Even assuming that is true, "[t]he Supreme Court has not expressly recognized a constitutional right to allocution." United States v. Lawrence, 735 F.3d 385, 407 (6th Cir. 2013). And "the Sixth Circuit has noted that '[t]here is no constitutional right to allocution under the United States Constitution.' " Cooey v. Coyle, 289 F.3d 882, 912 (6th Cir. 2002) (quoting Pasquarille v. United States, 130 F.3d 1220, 1223 (6th Cir.1997) (citing Hill v. United States, 368 U.S. 424, 428 (1962)). Thus, the alleged lack of an opportunity to challenge the victim impact statement did not amount to a violation of Petitioner's right to due process. Thus, Petitioner is not entitled to relief on this claim.

## V. Conclusion

For the reasons stated above, as to the claims raised in state court, the decision of the Michigan Court of Appeals was not contrary to, nor an unreasonable application

of, Supreme Court precedent. As to his defaulted claims, they lack merit and do not form the basis for habeas relief. Accordingly, the petition for a writ of habeas corpus is **DENIED**.

### VI. Certificate of Appealability

Petitioner may not appeal this decision unless a district or circuit judge issues a certificate of appealability, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

Reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to issue a certificate of appealability.

Finally, should Petitioner appeal, may not proceed in forma pauperis on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  February 26, 2014
       Detroit, MI

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 26, 2014, by electronic and/or ordinary mail.

    Sakne Chami
Case Manager, (313) 234-5160